### Tisdale H. Murphy, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 7,852.

1. CARRIERS—*rule as to act of God inapplicable to delay in delivery.* The rule that only an act of God or the public enemy can excuse nondelivery of goods intrusted to a common carrier for transportation is not applicable to the duty of a common carrier with reference to the time of delivery.

2. CARRIERS—*cold weather though not act of God as defense for delay.* A train transporting cattle could have been delayed by extreme cold weather which was not an act of God, and yet the cold weather could be a defense for delay in shipment.

3. CARRIERS—*burden of proof as to unreasonable delay of shipment.* Where in an action for injury to cattle due to carrier's delay in shipment, defendant's plea of the general issue negatived any "unreasonable delay," the burden of proof was upon plaintiff to show a delay caused by negligence, though defendant also pleaded an act of God.

4. CARRIERS—*property must be delivered within reasonable time.* Where property is delivered to a carrier for transportation, the latter must transfer and deliver it at its destination within a reasonable time.

5. CARRIERS—*evidence of unreasonable delay held of little value.* In action for injury to cattle by alleged delay in shipment, evi-

dence of the shipper that he had previously shipped stock through in a certain time, held of little evidenciary value as proving unreasonable delay at the time in question.

6. Carriers—*delay caused by feeding stock.* A carrier is required to unload and feed stock every 36 hours en route, and delay caused by this is susceptible of proof on a run in question wherein shipper claims unreasonable delay.

Appeal by defendant from the Circuit Court of Montgomery county; the Hon. Thomas M. Jett, Judge, presiding. Heard in this court at the April term, 1925. Reversed and remanded. Opinion filed October 27, 1925. Rehearing denied December 16, 1925.

Hill & Bullington, for appellant; John G. Drennan, of counsel.

Lane, Dryer & Brown, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

Appellee brought a suit in the circuit court of Montgomery county to recover damages alleged to have caused to stock carried by appellant from Omaha, Nebraska, to Farmersville, Illinois. The declaration contained three counts. The first two counts of the declaration averred that appellee delivered to the appellant 150 head of cattle, in proper condition for shipment from Omaha to Farmersville, and that it became the duty of the appellant to transport said cattle and deliver the same at Farmersville, within a reasonable time and without unreasonable delay, but that appellant did not do so and held said stock on its line of railway, to wit, 100 hours, in traveling from Omaha to Farmersville, and that by reason of such unreasonable delay the cattle were caused to shrink and appellee averred the damage. The third count set out the same matters and that by reason of the cattle being unreasonably, carelessly and negligently delayed in shipment they were caused to become sick and lame, and to shrink excessively in weight and that appellee suffered great damage, etc.

The appellant filed a plea of the general issue and a special plea, stating that the plaintiff ought not to have his action, etc., because the delay of the shipment of the cattle, if any, as charged in the declaration, was not caused by the act of the defendant but was caused by the act of God, to wit, a severe blizzard, cold spell and storm that arose during the progress of said shipment of cattle that hindered and delayed the usual and reasonable operation of the engine, cars and appliances on the train and of other trains of the defendant that did, without negligence on the part of the defendant, delay said shipment, and that if any damage thereby happened to the plaintiff's cattle the same was occasioned by the act of God and without fault or negligence on the part of the defendant.

Appellee replied to the second plea that it was because of its own wrong and without the cause of the act of God and without a severe blizzard and cold spell or storm during the progress of said shipment, and without being hindered and delayed in the usual and reasonable operation of its engines, cars and appliances, that caused the unusual and unreasonable delay as in the declaration mentioned. Issue was joined and the case was tried before a jury. There was a verdict and judgment for appellee in the sum of $450 and appellant has appealed.

The proofs tend to show that the shipment left Omaha in five cars at 9:55 p. m. February 1, and arrived at Farmersville at 9:35 p. m. February 5, traveling a distance of 647 miles. When the cattle left Omaha the weather was fair, the mercury about ten degrees above zero. It was not storming but there was a faint trace of snow during the day. The shipment was routed through Council Bluffs, Fort Dodge, Waterloo and Dubuque, Iowa, and Freeport, Bloomington and Clinton to Farmersville, Illinois, all upon appellant's line of railway. The cars were hauled on trains with other freight and at the end of divi-

sions were made up with other cars into a train for a run to the end of the next division. The train arrived at Waterloo two hours late, due to delay caused by connection with other trains from Council Bluffs. The greatest delay was caused between Waterloo, Iowa, and Freeport, Illinois, a distance of 160 miles. There were thirty-four loaded cars and one empty in the train. The train arrived at Waterloo at 6 p. m. and was to leave at 7 o'clock p. m. February 2, but did not leave until 9:40 p. m. on account of the air freezing on the engine. The weather was extremely cold and it grew colder all night, with a strong northwest wind blowing. In the evening it was three degrees below zero, growing colder during the night, and in the morning it was sixteen degrees below zero when the train arrived at Dubuque at 8:45 a. m. The train was stopped at Manchester, Iowa, on the last run to take on some additional cars, and while doing so the train "froze up"; the packing froze around the journals at this point. Much delay was caused by the train being sidetracked to permit delayed passenger and mail trains to pass, and upon attempting to start the train, even with three engines, it was found impossible to move it for several hours on account of the weather and the frozen condition of the appliances.

There was testimony tending to show that very unusual weather conditions existed in that section at this time, and that the air had not frozen up on a train at this point for three years. The testimony in this case is not conflicting, but it is rather a question of applying correct principles of law to the facts proven and it was, therefore, necessary that the jury be accurately instructed as to the law.

Appellee's third instruction informed the jury that when appellant accepted the shipment of stock, "The law made it the duty of the defendant to carry said stock to its destination, within a reasonable time, unless prevented by the act of God or the public enemy,"

etc. Appellant contends that the duty stated applies to the loss or destruction of the property and not to delay in shipment. (*Bacon v. Cleveland, C., C. & St. L. Ry. Co.,* 155 Ill. App. 40; *Perkins v. Cleveland, C., C. & St. L. Ry. Co.,* 183 Ill. App. 531; *Wabash, St. L. & P. Ry. Co. v. McCasland,* 11 Ill. App. 491; 4 R. C. L. p. 741, sec. 210.)

In *Bacon v. Cleveland, C., C. & St. L. Ry. Co., supra,* the court said:

"This instruction was clearly erroneous The rule that only an act of God or the public enemy can excuse the nondelivery of goods entrusted to a common carrier for transportation is not applicable to the duty of a common carrier with reference to the time of delivery."

The same rule is laid down in *Wabash R. Co. v. Johnson,* 114 Ill. App. 545, and in *Adams Exp. Co. v. Bratton,* 106 Ill. App. 563. In the latter case it is held:

"Before there can be a breach of this duty, a mere delay is wholly insufficient to create a liability. It must be 'an unreasonable delay, which is such as involves some want of ordinary care or diligence' on the part of the carrier. *Chicago & A. R. Co. v. Simms,* 18 Ill. App. 68, and cases cited."

The instruction was erroneous in stating the duty of the carrier.

The second instruction is subject to criticism for singling out and calling particular attention to certain evidentiary facts shown in the case and especially calling attention to the delay caused by the train freezing and causing it to become stalled. The instruction stated that if the jury believed that the train was permitted to stand still as a result of negligence of the employees, then, it would be considered an act of the defendant and not an act of God. It was not required that the freezing of the train be caused by weather that would be termed an act of God in order to make it a defense. The train could have

been delayed by extreme cold weather that was not an act of God and yet be a defense for delay in the shipment and not be considered as the instruction states "the act of God." The criticism to this instruction, as in others referred to, grows out of failure to distinguish between the duty imposed upon a carrier in the ultimate delivery of property intrusted to its care and its duty to transport within a reasonable time.

Appellant assigns error upon the giving of the seventh instruction for appellee as follows:

"The Court instructs the jury that the second plea filed by the defendants in this case, admits that the defendant did not deliver the plaintiff's cattle at Farmersville within a reasonable time and the defendant by its said second plea denies liability on the ground that the unreasonable delay was occasioned by an Act of God, viz.: by a storm, blizzard and cold spell, and you are further instructed that although you may believe from a preponderance of the evidence that there was a storm, blizzard and cold spell in the territory through which the said cattle were shipped, the same does not establish a defense under said second plea, unless you believe from the evidence that the storm, blizzard and cold spell was an unusual storm, blizzard and cold spell, and one not reasonably expected for the territory through which the said cattle were shipped."

This instruction was clearly erroneous and was not warranted by the form of the pleas. Appellant's plea of the general issue was at all times in the case and negatived any "unreasonable delay." Under this plea the burden of proof was upon appellee to show a "delay" caused by the negligence of appellant. The second plea merely undertook to explain a delay, "if any," as occurring by the act of God. Under the general issue, appellant had the right to show the state of the weather or any other circumstance or condition not growing out of appellant's negligence, to account for a delay in the shipment, if there was any

delay. But the instruction amounts to a judicial determination that such delay as occurred in the shipment in question was an unreasonable delay and that appellant was guilty of negligence, unless the storm and weather can be construed as an act of God. This instruction did not state the law and was very prejudicial to appellant.

Error is assigned upon the giving of appellee's fourth instruction, stating that if the negligence of the carrier contributed in part to said unreasonable delay, then the issues should be found for the plaintiff. Appellant contends that the instruction is erroneous and that it must be shown that the negligence of the carrier was the proximate cause of the injury. Inasmuch as the judgment is to be reversed and the cause remanded for another trial, we do not, in this opinion, pass upon this assignment of error.

It is conceded, as a matter of law, that where property is delivered to a carrier for transportation, that the carrier must transfer the property and deliver it at its destination within a reasonable time. Appellee, to establish the usual and customary time within which stock was ordinarily carried between Omaha, Nebraska, and Farmersville, Illinois, testified that he had been a shipper of stock for 15 years, and that in the fall of the year he had a car of sheep come through from Omaha in 60 hours and stated further that: "It seems to me that they ought to go in 60 hours," and the witness further stated, upon being pressèd, that in his judgment, based upon his experience, the stock should ordinarily be carried from Omaha to Farmersville in 60 hours. There was no further testimony upon this phase of the case and the witness stated no other knowledge or experience as to the running time of trains moving stock. We are not prepared to state that this testimony was incompetent in this suit, but it certainly was not the best evidence obtainable upon the subject and under all the circumstances stated was of little evidentiary

value. Some of the trains on this route carrying stock and other freight, from the testimony, had schedule runs and time of departure and arrival at division points, and we must conclude that this system prevailed over the entire route unless it is shown to the contrary. Stock is required to be unloaded and fed every 36 hours en route, and it would seem that the delay caused by this rule would be susceptible of proof on the run in question.

For the errors pointed out, the judgment of the circuit court of Montgomery county is reversed and the cause remanded.

*Reversed and remanded.*