JOHN CLARKE v. PHILADELPHIA & READING COAL & IRON COMPANY.[1]

June 24, 1904.

Nos. 13,857—(151).

**Evidence—Intoxication.**

While it is permissible to allow an observer of ordinary intelligence to give his opinion whether a person is intoxicated at a material time, where his judgment is derived from facts and circumstances which enable him to form an opinion, it is within the discretion of the trial court to determine whether the proper foundation therefor has been laid; and *held,* that the refusal of the court to permit inquiries of that nature in this case was not error.

**Opening in Sidewalk.**

A person under the influence of liquor, but not so intoxicated as to interfere with the exercise of ordinary care on his part in walking upon the public sidewalk, is not deprived of the right to protection from the negligence of another, who fails properly to guard an opening therein, into which the pedestrian fell and received injuries.

**Damages.**

The award of a jury of $2,500 for an injury to a man fifty-three years of age, whereby his left collar bone was broken, with other injuries to his arm and hand, which were permanent, *held* not to be so excessive as to indicate passion or prejudice, under the facts in this case.

[1] Reported in 100 N. W. 231.

Appeal by defendant from an order of the district court for Ramsey county, Kelly, J., denying a motion for a new trial. Affirmed.

*M. H. Boutelle* and *N. H. Chase,* for appellant.

*H. A. Loughran,* for respondent.

LOVELY, J.

Action for personal injuries from a fall into an opening in the sidewalk adjacent to the Astoria Hotel, in St. Paul, on July 6, 1903. There was a verdict for plaintiff for $2,500. Defendant moved for a new trial, which was denied. This appeal is from that order.

Defendant was engaged in the business of selling coal, and, as an incident thereto, on the day in question, during the morning hours, between eight and nine o'clock, had caused to be removed the grate coverings, leaving two openings in the sidewalk in question, for the purpose of placing coal in the cellar beneath and removing ashes therefrom. These were each about two feet square. The basement or cellar beneath was about twelve feet deep. Two servants of the company, Mulkerin and Schmidt, were there with a team. They had removed the coverings, and were taking ashes from the hole next the hotel, having previously put coal in the outside opening. Another servant, Ranallo, was in the basement, putting the ashes into baskets, which were lifted to the sidewalk and placed in the wagon for removal. This sidewalk was in a frequented and populous part of the city. Many travelers were passing over the same at or about the time.

Plaintiff, walking over the same in a southerly direction, claims to have had his attention diverted from the walk to the adjacent windows, when he stepped into the opening nearest the hotel, falling some twelve feet, and received quite severe injuries. He was able, with help, to get up, and was assisted to an ambulance and taken to the hospital, where he remained ten days. His left collar bone or clavicle was broken, and he claims to have suffered severe and permanent injuries to his left arm and hand. The substantive ground of negligence charged against defendant was that it did not sufficiently guard and protect the opening, by reason whereof plaintiff received the injuries complained of, and this was not done otherwise than by the presence of defendant's two servants, who were engaged at their work. The defendant at the trial endeavored to show that the plaintiff was so intoxicated at the time he

received his injuries that he was unable to walk, and carelessly, without regard to his own safety, staggered into the opening.

An examination of the evidence leads to the conclusion that the verdict must be sustained upon the ground that it was fairly an issue of fact whether defendant had, in its use of the open ash hole from which it had removed the covering, exercised reasonable care in guarding the same.

The two contentions which demand specific notice are (1) the alleged contributory negligence, through intoxication, of plaintiff, which it is insisted was the proximate cause of the accident; (2) the amount of the verdict, which is claimed to have been so large, in view of the injuries sustained, as to indicate passion and prejudice on the part of the jury.

Incidental to the claim that plaintiff was so intoxicated that he was unable to use the sidewalk with proper care, the witness Ranallo, who was in the basement under the ash hole, was asked the following question:

> In your opinion, from what you saw of the man there at that time [referring to plaintiff immediately after he fell], was he intoxicated or otherwise?

This was objected to as incompetent, irrelevant, and immaterial, no proper foundation laid, and calling for a conclusion of the witness, which objection was sustained under exception; the court also refused defendant's offer to show that, in this witness' opinion, the plaintiff, at the time he saw him (plaintiff) there, was in an intoxicated condition. The same objection as to the question previously asked was made to this offer, and sustained. When these rulings were made, there was no further testimony to show Ranallo's capacity to form an opinion of the intoxication of plaintiff, than what he derived at the moment of the fall, when he was immediately assisted to leave the basement by the witness.

In McKillop v. Duluth St. Ry. Co., 53 Minn. 532, 55 N. W. 739, it appeared that plaintiff was lying helpless on defendant's track and was run over. A witness, who saw him before the accident and testified to that fact, stated that he then went to him and offered to take him home, but he declined, saying he must go and catch his team, which had run away. He leaned on the witness unsteadily, and staggered as he started

off.   The witness had an opinion whether plaintiff was drunk or not, and was then asked to give such opinion.  It was excluded.  This court, reversing that ruling, held that a spectator might state the effect that the acts, appearance, and speech of this person had on his mind, and could give his opinion of his condition as to intoxication, upon the ground that the physical aberration which was in this respect indicated by his countenance or actions was within the common knowledge of an observer, without showing expert capacity;  but it was not held that he might do so, without reference to his ability to form a judgment based upon previous knowledge of facts and circumstances qualifying him to express his conclusion in such a matter, and whether a sufficient foundation exists must, in such a case, as in others where opinion evidence is authorized, rest largely in the discretion of the trial judge.

In this case the victim of the accident fell into a basement twelve feet below the sidewalk.   He was immediately picked up by the witness, taken to a chair, and from there helped out of the basement.   And we cannot say, upon these facts alone, that sufficient foundation had been shown for his judgment before the accident, or that the rulings referred to, which were within the fair discretion of the court, were erroneous.

The court also sustained objections to questions on cross-examination of plaintiff as to whether he had been a hard-drinking man, and whether he had not been repeatedly laid off from work for drunkenness.   If the habit of the plaintiff at other times to drink intoxicants in any case would be relevant and material, which we need not now determine, since the evidence on this question was not confined to the time of the accident, at most it would have a tendency to show that his statement that he was not then intoxicated was improbable, and whether on cross-examination he was thus required to discredit his previous statements was also within the sound discretion of the court.   We may say further on this question that full latitude was given to the defendant to show that at the time of the accident and afterwards plaintiff was intoxicated.   He had himself testified that he had taken two drinks of beer previously on the morning, but that at the time of the accident he was not deprived of the intelligent command of his actions, so as to affect the use of his powers of locomotion, or interfere with his ability to walk upon the sidewalk.   The court instructed the jury upon this

issue that, if the accident in question resulted from plaintiff's failure to exercise ordinary care and precaution in the same manner as an ordinarily careful and prudent man would have exercised it at the time by reason of his intoxication, he could not recover. The charge of the court in this respect was sufficiently favorable to the defendant.

The intoxication of a pedestrian does not justify negligence which occasions his injury, nor allow one who has been guilty of actionable carelessness to charge up against the unfortunate victim the consequences of its own fault, unless it is also the fact that his misconduct is the direct and proximate cause of an accident resulting from that cause. An intoxicated person receiving injuries by reason of the negligence of another is not for that reason, as a matter of law, precluded from recovery, but his mental condition, so far as it affects the exercise of care on his part, is a question of fact to be considered by the jury. Lyons v. Dee, 88 Minn. 490, 93 N. W. 899.

It is urged very earnestly that the damages were excessive. It may be conceded that they were large, and that the jury dispensed compensation with a liberal hand; but we are not able to say that the verdict, which was approved by the learned trial court, was so out of all reasonable comparison with the injuries suffered as to indicate that the jury were controlled by passion or prejudice. The plaintiff sustained a serious injury. His left collar bone was broken. Portions of his body were severely bruised. He was removed to the hospital, where he remained ten days. He lost considerable time, and suffered much pain. There was a very imperfect union of the fractured bone, and upon the view of physicians, which was contradicted, but which the jury may have believed, he has never had the former natural and necessary movements of his left arm, and never will have, in their opinion. His left hand has become stiffened. He is unable to close his fingers or enjoy its previous use. He was a shoemaker, fifty-three years of age, and received compensation for his labor at $12 a week. In view of the entire evidence, we are unable to set the verdict aside and grant a new trial solely on the ground that the damages were excessive.

The order denying a new trial is affirmed.